[S. F. No. 14639. In Bank.—May 1, 1933.]

MERNER LUMBER COMPANY (a Corporation), Appellant, v. ELIZABETH BROWN, Respondent.

THE MINTON COMPANY (a Corporation), Appellant, v. ELIZABETH BROWN, Respondent.

Richardson & Richardson, Owen D. Richardson and Donald B. Richardson for Appellants.

Rodgers, Smith & Costello and Rodgers & Smith for Respondent.

CURTIS, J.—These two actions were instituted by two separate materialmen, the Merner Lumber Company, a corporation, and The Minton Company, a corporation, to foreclose their liens against the property of the owner, Elizabeth Brown, to secure a money judgment against the

contractor, Fred S. Wiseman, for materials used, and to enforce bond against the surety company, the Commerce Casualty Company. Subsequent to the commencement of said actions, the surety company, deeming itself liable to the materialmen under its bond, paid said claims, took from said materialmen a purported assignment of their rights as materialmen, and continued the actions in the names of said materialmen. The contractor defaulted, and the actions were not pressed against the surety company for the reason that it had, in fact, become the real party plaintiff. The actions were consolidated for trial. Judgment was rendered against the plaintiffs and in favor of the defendant owner denying foreclosure of the materialmen's lien against the property and in favor of the plaintiffs against the defaulting contractor for the agreed value of the materials furnished. The appeal is prosecuted by the surety company, in the name of the original plaintiffs, from the judgment denying it a lien against the property of the owner.

The facts briefly stated are these: On July 14, 1930, the owner, Elizabeth Brown, entered into a contract with Fred S. Wiseman for the construction of a house to cost $3,500. The contract was filed for record together with a surety bond in the sum of $1750, being one-half of the contract price of the house, furnished by the contractor, and issued by the Commerce Casualty Company, which was conditioned, as provided in section 1183 of the Code of Civil Procedure, for the payment of all claims of all persons performing labor or furnishing materials to be used in the construction of said dwelling-house, and which by its terms, as provided by said section 1183 of the Code of Civil Procedure, was to inure to the benefit of any and all persons who furnished materials, so as to give such persons a right of action to recover upon said bond in any suit brought to foreclose the liens or in a separate suit brought on said bond. Thereafter it appears that on or about November 15, 1930, Wiseman abandoned the contract before the work was fully completed. The owner, after taking the matter up with the surety company, proceeded to finish the building and paid out for labor and materials an amount which, together with the amounts already paid out to the contractor, totaled the contract price of the building. The plaintiffs herein, not

having been paid, filed their claims of lien against the property and commenced these actions, which, as before indicated, were continued in their names by the surety company after the payment to them by the surety company of the amount claimed due by them from the contractor, less an agreed percentage. The amount claimed by the Merner Lumber Company to be due, and which was found due by the trial court, was the sum of $1,076.57, and the amount claimed to be due by The Minton Company, and which was found due by the trial court, was the sum of $666.37. The court further found that the Commerce Casualty Company had fully paid, satisfied and discharged the indebtedness originally due the two plaintiff lumber companies.

The first contention of the appellant, the surety company, is that there is a material conflict in the findings in respect to whether the claims of the two lumber companies had been paid. ██ Under well-established rules of construction it is the duty of a reviewing court to so construe the findings of the trial court that they will, if possible, support the judgment. It is not necessary to cite authority in support of this well-known and firmly established rule. ██ When we read the findings together as a whole we think there is no inconsistency or conflict therein. What the court evidently intended to find, and we think that in substance it did find, was that the contractor had not paid the two lumber companies the indebtedness respectively due to them from the contractor, but that, as the finding expressly states, the appellant, the Commerce Casualty Company, subsequently paid these claims in full. There is evidence in this case to show that there was due at the commencement of this action to the two lumber companies the amount of their claims as above set out and that the surety company paid these two claims in full after the commencement of the action. The findings fairly reflect these facts and are not so inconsistent as to justify a reversal of the judgment on that ground.

██ It is next contended that the finding that the surety company paid the indebtedness due the two lumber companies is not supported by the evidence. In this connection the appellant admits that it paid the amount due each of said companies on their said claims, less a deduction of some five per cent, which they each agreed to accept in a

cash settlement, but that in connection with these payments it took from each of said companies an assignment of its claim sued on. These transactions, the appellant contends, did not amount to payment of these claims, but, on the other hand, were a purchase of said claims. The surety either paid these claims or it purchased them from the two lumber companies. It could not do both. If it paid them, it could not have bought them, for upon their payment they were extinguished and there was then nothing to purchase. On the other hand, if it bought the claims it could not thereafter pay them without paying itself and this it does not claim to have done. There is some conflict in the evidence upon this phase of the case. Representatives of each of the two lumber companies testified that the surety company paid their claims. Mr. Desky, superintendent of the surety company, explained the transaction as follows: "Under the terms of our bond we decided that our obligation to third parties was not affected by a breach of the contract on the part of the obligee, and we would be bound regardless as to the outcome of any suit that we might institute against the obligee under the contract to pay the materialmen's claims under this contract. We didn't feel that we would be in any worse position by paying them than we would by trying to deny liability under the claims of the material, so we paid the claims." He also testified that the surety company took assignments of these claims. Assuming, therefore, that there was a conflict in the evidence as to whether the claims were paid or whether they were purchased by the surety company, the evidence of payment was sufficient to support the finding of the court that the surety company paid and discharged the claims in full. ■ "Payment by a surety extinguishes the principal obligation." (6 Cal. Jur., p. 415.) It is well-settled law in this state that when a surety pays a debt for which he is liable as such surety, he thereby extinguishes the debt and his remedy is against the principal upon the implied obligation of the principal to reimburse him. (*Johnson* v. *Mortgage Guarantee Co.*, 117 Cal. App. 416, 420 [4 Pac. (2d) 208]; *W. H. Marston Co.* v. *Central Alaska Fisheries Co.*, 201 Cal. 715 [258 Pac. 933].) Appellant's contention, therefore, that the finding of payment is not supported by the evidence cannot be sus-

tained. By sustaining the finding that the claims were paid by the surety we have made it unnecessary to refute the further claim of the surety company that the findings are insufficient to support the judgment.

■ Another objection made by appellant to the judgment is that the court failed to find on a material issue in the case. This material issue was, the appellant asserts, that the respondent violated the contract by "making advances or premature payments to the contractor". It may be seriously questioned whether this issue of premature payments was really an issue in the case. The plaintiffs in whose name the appellant is prosecuting this appeal made no mention of premature payments. The appellant is bound by the complaints of the two original plaintiffs herein. In appellant's answer it made no claim that the respondent made any premature payments on the contract, and we find no mention of this subject in respondent's answer. The trial court was extremely liberal in the ruling regarding the introduction of evidence and accordingly the record does show that possibly premature payments were made by the respondent to laborers and materialmen, but as there was neither pleading nor finding as to this fact, it is evident that it was not regarded as a material issue in the case, and as neither the appellant nor either of said plaintiffs tendered it as an issue in any pleading filed by them, we are of the opinion that it would be highly improper for a reviewing court to reverse the judgment under such a state of facts for failure of the trial court to make such a finding.

■ As noted above, the trial judge denied a lien against the building but gave judgment against the contractor for the amount of the two claims by the plaintiffs. Appellant contends that the judgment against the contractor is inconsistent with the finding that the claims were paid. There is no appeal from the judgment against the contractor. If the court erroneously gave judgment against the contractor, that was an error which does not concern appellant and regarding which it cannot complain especially as the judgment was in its favor. There was nothing, however, inconsistent in the provisions of the judgment. When a surety pays the debt, while he thereby extinguishes the debt,

he has a cause of action against his principal for reimbursement. (*Johnson* v. *Mortgage Guarantee Co., supra.*)

As a final attack on the judgment appellant makes the broad statement that "the decision is against the law and is contrary to the state Constitution". Under this general accusation, appellant makes two specific charges wherein it contends that the judgment is against the law. It is first stated that the decision ignores the assignment made by the parties and, secondly, that it ignores the equitable theory of subrogation. Neither of these charges is meritorious. The decision does ignore the assignment for the reason that the evidence supported the theory of respondent that appellant paid the claims of the two plaintiffs. The superintendent of appellant company, whose testimony is quoted above, testified that the surety company considered that it was bound by its bond, and that they did not feel "that we would be in any worse position by paying than we would by trying to deny the liability under the claims of the materialmen, so we paid the claims". Evidently the trial court was of the opinion that if the claims were paid there was nothing to assign and, therefore, the attempted assignment was ineffective for any purpose. The charge that the decision ignores the equitable theory of subrogation is also without justification. We will assume that appellant, by paying the two lien claimants, was subrogated to all rights of these claimants to foreclose their respective liens. What rights had these lien claimants, before they sold their claims, against the property of the respondent, the owner of the building, for the construction of which the materials were furnished? The respondent had complied with all the requirements of section 1183 of the Code of Civil Procedure providing for the filing of a written contract between herself and the contractor for the construction of said building accompanied by a bond with a good and sufficient surety in an amount not less than fifty per cent of the contract price and containing all the other provisions required by said section of the code. This section then provides that when the owner has complied with all the requirements of this section and an action has been commenced to foreclose liens against said building, "then the court must, where it would be equitable so to do, restrict the recovery under such liens to an aggregate amount equal

to the amount found to be due from the owner to the contractor and render judgment against the contractor and his sureties on said bond for any deficiency or difference there may remain between said amount so found to be due to the contractor and the whole amount found to be due to claimants for such labor or materials or both''. The trial court in rendering its judgment followed the provisions of this section of the code. It found that the owner had paid the full amount of the contract price of said building, in part to the contractor before he abandoned his contract, and thereafter the balance to complete said building. It accordingly restricted its judgment to the contractor. Had the original plaintiffs been prosecuting this action at the time of the rendition of said judgment, the trial court in case it considered such a decree equitable, would have been authorized under this section to have made said judgment run against the surety as well as the contractor, but as the surety by paying the claims was the real plaintiff in fact, no judgment was rendered against the surety. The trial court did not, therefore, ignore the equitable doctrine of subrogation, but applied it in so far as the facts of this case would permit by rendering judgment in its favor against its principal, the contractor.

The judgment is affirmed.

Langdon, J., Seawell, J., Thompson, J., Preston, J., and Shenk, J., concurred.